UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| GINA RENEE ELROD, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) Case No.: 5:18-cv-00996-LCB |
| NANCY A. BERRYHILL, ACTING COMMISSIONER OF SOCIAL SECURITY | ) ) ) ) |
| Defendant. | ) ) |

**MEMORANDUM OPINION AND ORDER**

On June 28, 2018, the Plaintiff Gina Elrod filed a complaint (Doc. 1) seeking judicial review of an adverse final decision of the Commissioner of the Social Security Administration ("the Commissioner") pursuant to 42 U.S.C. § 405(g). The Commissioner filed an answer to the complaint on October 22, 2018. (Doc. 6). The Plaintiff filed a brief in support of her position on October 26, 2018, (Doc. 11) and the Commissioner filed a brief in support of the decision on November 15, 2018 (Doc. 11). Therefore, this issue is ripe for review. For the following reasons stated below, the final decision of the Commissioner is affirmed.

**I.      BACKGROUND**

1

The Plaintiff protectively filed for a period of disability and disability insurance benefits on November 6, 2014 (R. 11). She alleged that her disability began on September 1, 2006. *Id*. Her claim for benefits was denied on April 29, 2015, and the Plaintiff subsequently filed a request for a hearing before an Administrative Law Judge (ALJ) on June 16, 2015. *Id*. The Plaintiff appeared before ALJ Mallette Richey on June 5, 2017. *Id.* The Plaintiff testified at the hearing and was questioned by her attorney and the ALJ. (R. 34, 40). Additionally, vocational expert John McKinney testified at the hearing. (R. 56). The ALJ issued her opinion on August 15, 2017 (R. 20). When she issued her opinion, the ALJ used the five-step evaluation process promulgated by the Social Security Administration to determine whether an individual is disabled. (R. 12). The ALJ made the following determinations:

1. The Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2014. (R. 13).

2. The Plaintiff has not engaged in substantial gainful activity since September 22, 2013, the alleged onset date of the disability. *Id.*

3. The Plaintiff has the following severe impairments: degenerative disc disease, fibromyalgia, hypertension, affective disorder, and osteoarthritis. *Id.*

4. The Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (R. 13-14).

5. The Plaintiff has the residual functional capacity (RFC) to perform less than the full range of light work as defined in 20 C.F.R. 404.1567 (b) and

2

416.967(a) except she can lift and carry 20 pounds occasionally and 10 pounds frequently. The Plaintiff can also: stand and/or walk (with normal breaks) for a total of six hours in an eight-hour workday; sit (with normal breaks) for a total of six hours in an eight hour workday; push and pull 20 pounds occasionally and 10 pounds frequently; climb ramps and stairs frequently and climb ladders, ropes, and scaffolds occasionally; frequently balance, stoop, kneel, crouch, and crawl; understand and carry out short simple instructions; can concentrate for 2-hour periods to complete an 8-hour workday for short simple tasks; occasionally interact with the public, coworkers, and supervisors; and adapt to infrequently well-explained change. The Plaintiff should avoid concentrated exposure to hazards such as moving unguarded machinery and unprotected heights. (R. 15).

6. The Plaintiff has no past relevant work. (R. 18).

7. The Plaintiff was born on August 14, 1965, and was 41 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date. (R. 19).

8. The Plaintiff has at least a high school education and can communicate in English. *Id*.

9. A determination of transferability of job skills is not material to the determination of disability as the Medical-Vocational Rules support a finding that the Plaintiff is not disabled. *Id.*

10. With the Plaintiff's age, education, work experience, and RFC, there are a significant number of jobs in the national economy she can perform. *Id.*

11. The Plaintiff has not been under a disability as defined in the Social Security Act, from September 1, 2006, through the date of the ALJ's decision on September 21, 2017. (R. 20).

After the ALJ denied her claim, the Plaintiff requested an appeal to the Appeals Council and was denied on May 21, 2018 (R. 1). At that point, the ALJ's decision became the final decision of the Commissioner. *Henry v. Comm'r of Soc.*

*Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015). The Plaintiff filed this action on June 28, 2018. (Doc. 1).

## II. DISCUSSION

The Social Security Administration (SSA) is authorized to pay Supplemental Security Insurance (SSI) and disability insurance to claimants that have a disability. *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1358 (11th Cir. 2018) (citing *Barnhart v. Thomas*, 540 U.S. 20, 21 (2003)). Title II of the Social Security Act defines disability as "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months." *Id.* at 1358-59. (citing 42 U.S.C. §§ 423 (d)(1)(A)).

### A. Standard of Review

The Court reviews "de novo the legal principles upon which the ALJ relied, but [is] limited to assessing whether the ALJ's resulting decision is supported by substantial evidence." *Henry*, 802 F.3d at 1266-67. "Substantial evidence is more than a scintilla and is such relevant evidence that a reasonable person would support its conclusion." *Winshel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citing *Crawford v. Comm'r of Soc. Sec.*, 631 F.3d 1155, 1158 (11th Cir. 2004)). The Court does not "decide facts anew, mak[e] credibility determinations,

or reweigh the evidence." *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). The Court instead "must scrutinize the record as a whole in determining whether the ALJ reached a reasonable decision." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

### B. Five Step Sequential Evaluation

In order to determine if a claimant has a disability, the SSA regulations mandate that an ALJ must follow a five-step sequential evaluation while evaluating a disability claim. *See* 20 C.F.R. §§ 404.1520; 416.920. Pursuant to the regulations, the ALJ must proceed with his analysis as follows:

1. Is the claimant engaged in substantial gainful activity? If "yes" the claimant is not disabled and the analysis ends here. If the answer is "no," proceed to the next step of the analysis. 20 C.F.R. § 404.1520.

2. Does the claimant have a medically determinable physical or mental impairment or combination of impairments that meets the duration requirements of 20 C.F.R. § 404.1509? If "no," the claimant is not disabled. If "yes," proceed to the next step of the analysis. *Id.*

3. Does the claimant have an impairment that equals a listed impairment in 20 C.F.R. § 404, Subpart P Appendix 1 and meets the durational requirements of 20 C.F.R. § 404.1509? If "yes" the claimant is disabled. If "no," proceed to the next step of the analysis. *Id.*

4. Does the claimant have the residual functional capacity (RFC) to return to past relevant work? If "yes" the claimant is not disabled. If no, proceed to the final step of the analysis. *Id.*

5. Does the claimant's RFC, age, education, and work experience allow him or her to make an adjustment to other work? If "no," the claimant is disabled. If "yes," the claimant is not disabled. *Id.*

5

Initially, the claimant bears the burden of proof regarding the first four steps of the above analysis. *Washington,* 906 F.3d at 1359. The claimant carries a particularly heavy burden when showing why he or she cannot engage in past relevant work. *Id.* After the fourth step, the burden then shifts to the Commissioner to determine if there are jobs in the national economy that the claimant can perform. *Id.* However, while the burden shifts to the Commissioner at step five, the burden ultimately falls to the claimant to show a disability exists. *Id*. (citing *Doughty v. Apfel*, 245 F.3d 1274, 1280 (11th Cir. 2001)).

**C. The Plaintiff's Contentions**

The Plaintiff alleges the ALJ erred in several ways when determining she was not disabled. First, the Plaintiff claims the ALJ improperly weighed the medical opinions of non-examining and examining physicians that examined her. (Doc. 11, p. 7, 12). She also argues that the ALJ improperly determined the Plaintiff's residual functional capacity, or ("RFC"). Initially, the Plaintiff posited that the ALJ failed to find she "met or equaled a Listing" at Step Three of the analysis. (Doc. 11, p. 1). However, she did not elaborate further on this point and did not provide any supporting arguments. Therefore, this issue is waived. *See N.L.R.B. v. McClain of Ga., Inc.*, 138 F.3d 1418, 1422 (11th Cir. 1998) (holding "[i]ssues raised in a perfunctory manner, without supporting arguments and citation to authorities, are generally deemed to be waived.") Additionally, the Plaintiff's argument the ALJ

erred at Step Five of her analysis (Doc. 11, p. 10) is waived because no citations to this point are provided. *See id.*

**1. The ALJ did not give inappropriate weight to the non-examining physicians' opinions.**

The Plaintiff contends the ALJ incorrectly gave Dr. Robert Estock and Dr. Robert Heilpern's opinions about her disability status great weight because they did not examine her. (Doc. 11, p. 8). The ALJ noted one reason she gave great weight to the physicians' opinions because they were "consistent with and supported by the medical record." (R. 18). Both physicians found that the Plaintiff's severe impairments were not disabling, and she could perform light work because of evidence provided in her medical records and her activities of daily living. (R. 108, 125).

When deciding what weight to give medical opinions, "the ALJ should consider the following facts: the examining and treatment relationship between the claimant and doctor; the supportability and consistency of the opinion with the record as a whole; the specialization of the doctor; and other factors that tend to support or contradict the opinion." *Hand v. Soc. Sec. Admin.*, 786 F. App'x 220, 224 (11th Cir. 2019). "The ALJ applies the same standards whether the medical opinion is from a treating physician, a consultative examiner hired by the agency, or a nonexamining, reviewing physician." *Id.* Generally, the regulations provide more weight is given to the opinion of an examining source rather than a non-examining

source. 20 CFR § 404.1527(c)(1). The regulations also provide that more weight will be given to sources that are supported by the claimant's entire record. *See id*. "Of course, the ALJ may reject any medical opinion if the evidence supports a contrary finding." *Sharfarz v. Bowen*, 825 F.2d 278, 280 (11th Cir. 1987).

The ALJ's decision to give great weight to Drs. Estock and Heilpern's opinions is supported by substantial evidence. The objective medical evidence is consistent with their findings. While the record reflects the Plaintiff indeed experienced physical and mental discomfort from her impairments, her medical records generally reflect largely normal findings after treatment. *See* (R. 409, 459, 490, 642, 797). For example, these records provide information such as the Plaintiff's gait was normal, her mental status was unremarkable, and she was not experiencing cardiovascular issues. (R. 459, 596, 637). Finally, the Plaintiff reported that she could perform "light household chores, laundry, cook light meals, shower and dress." (R. 555).

The Plaintiff argues that a non-examining physician's opinion cannot constitute substantial evidence, citing *Spencer ex rel Spencer v. Heckler*, 765 F.2d 1090, 1094 (11th Cir. 1985). However, the reports of non-examining physicians "*taken alone*" are not substantial evidence. *Id*. (emphasis added). The ALJ also supported her findings with notes from examining physicians, the Plaintiff's reported daily activities, and the record in its entirety. *See* (R. 17, 18). The non-

8

examining physician's opinions are supported by objective medical evidence and the ALJ did not solely rely on them to determine whether the Plaintiff was disabled. Accordingly, substantial evidence supports the ALJ granting their opinions great weight.

**2. The ALJ correctly weighed the examining psychologist's opinion.**

The Plaintiff also contends that the ALJ improperly discounted Dr. Erin Smith's medical opinion. (Doc. 11, p. 12). Dr. Smith provided that the Plaintiff's ability to maintain gainful employment was "moderately impaired" because of her mental health issues. (R. 557). The ALJ wrote she gave less weight to Dr. Smith's opinion because it was "vague and undefined with no function by function limitations." (R. 18).

Before the Court analyzes this argument, the Plaintiff also posits that the ALJ improperly weighed her treating physician's opinion. (Doc. 11, p. 12). While her record contained information from her treating physicians like Dr. Jerry Graham and Dr. David Meyer, they did not provide medical opinions in this case. A medical opinion is a "statement[] from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 404.1527. Her treating physicians did

not provide a medical opinion defined by the regulations, so this argument is meritless.

Regarding the examining psychologist, the ALJ's decision to discount her opinion is supported by substantial evidence. Objective medical evidence in the Plaintiff's record shows generally normal mental status evaluations that demonstrate her "speech [was] clear, normal affect, responds appropriately, [and she was] oriented." (R. 596, 637, 810). The Plaintiff also reported that her symptoms related to her depression occur "intermittently, but are present about half the time." (R. 823). During this same visit, the record provides she was "alert; oriented to person, place, and time; [and had] appropriate affect and demeanor." (R. 825). While the Plaintiff's records do indicate she suffers from depression, substantial evidence supports the ALJ's determination to give Dr. Smith's opinion less weight.

### 3. The ALJ did not err when determining the Plaintiff's RFC.

Finally, the Plaintiff argues that the ALJ erred when determining the Plaintiff's RFC. As noted above, the ALJ found that the Plaintiff could perform "less than the full range of light work." (R. 15). SSR 96-8p defines RFC as "what an individual can still do despite his or her limitations." SSR 96-8p, 1996 WL 374184 at *2. A claimant's RFC does not "represent the *least* an individual can do despite his or her limitations or restrictions, but the *most*." SSR 96-8p, 1996 WL 374184 at *2. When determining an individual's RFC, an ALJ "must include a narrative

discussion describing how the evidence supports each conclusion, citing specific medical facts…and nonmedical evidence." *Id.* at *7. An ALJ also "must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" *Id.* The ALJ's RFC assessment must "consider and address" medical opinions and "include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence." *Id.*

The ALJ considered all the Plaintiff's severe impairments when determining her RFC. (R. 17). She supports her finding that the Plaintiff's symptoms are not disabling with medical evidence such as the Plaintiff's medical records and non-medical evidence like her Adult Function Report. *See* (R. 16, 18). The ALJ also discusses the Plaintiff's depression, which is not listed as a severe impairment. (R. 18). Finally, as discussed in the above analysis, the ALJ discussed differing medical opinions and stated why she gave more weight or less weight to disparate findings. *See* Part II(C)(1&2). Therefore, the ALJ's finding is supported by substantial evidence.

The Plaintiff also argues the ALJ should have considered her poverty when determining whether was disabled. Indeed, the Eleventh Circuit has held "poverty excuses noncompliance." *Dawkins v. Bowen*, 848 F.2d 1211, 1213 (11th Cir. 1988). An ALJ must consider a claimant's ability to afford treatment when it is the sole

reason for finding a claimant is not disabled. *See Ellison v. Barnhart*, 355 F.3d 1272, 1275 (11th Cir. 2003) ("[W]hen an ALJ relies on noncompliance as the sole ground for the denial of disability benefits, and the record contains evidence showing that the claimant is financially unable to comply with prescribed treatment, the ALJ is required to determine whether the claimant was able to afford the prescribed treatment.") In the record, there is a mention that the Plaintiff is insured and unable to see an orthopedic specialist in Dr. Bhavna Sharma's report. (R. 547). However, there is no indication that the ALJ solely based her disability determination on whether the Plaintiff could afford treatment. Therefore, this argument fails.

### III. CONCLUSION

For these reasons, and the Court being otherwise sufficiently advised, it is **ORDERED** that the final decision of the Commissioner is **AFFIRMED**. A final judgment will be entered separately.

**DONE** and **ORDERED** this February 24, 2020.

_____
**LILES C. BURKE**
UNITED STATES DISTRICT JUDGE